UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

OTHELLO SANDIFER                                  CIVIL ACTION

VERSUS                                            NO. 23-280

JOHN DOE, *et al.*                                SECTION M (4)

## ORDER & REASONS

Before the Court is a motion for summary judgment filed by defendant Walmart, Inc. ("Walmart").[1]  Co-defendant U.S. Xpress, Inc. ("U.S. Xpress") responds in opposition,[2] and Walmart replies in further support of its motion.[3]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion.

## I.      BACKGROUND

This case concerns a personal injury.  On December 18, 2021, Sandifer, who was working for Pilot Travel Centers ("Pilot") as a truck driver, delivered fuel to the Walmart distribution center in Robert, Louisiana.[4]  While Sandifer was outside of his truck but in the area designated for those persons doing fuel delivery, he was hit by an 18-wheeler tractor-trailer owned and operated by U.S. Xpress.[5]  Sandifer filed this suit in state court against Walmart, U.S. Xpress, and the unknown driver employed by U.S. Xpress,[6] alleging negligence claims and seeking recovery for personal

---

[1] R. Doc. 66.
[2] R. Doc. 78.  Plaintiff Othello Sandifer did not oppose Walmart's motion.
[3] R. Doc. 80.
[4] R. Doc. 1-2 at 2.
[5] *Id.* at 3.
[6] After suit was filed, Sandifer discovered that the truck driver was Malcolm A. Malveo, and attempted to file an amended complaint naming Malveo as a defendant. R. Doc. 24.  However, upon Walmart's motion, Sandifer's first amended complaint was stricken because it was untimely filed. R. Doc. 56.  Thus, Malveo is not a party to this suit.

injuries he sustained.[7]  Walmart, with U.S. Xpress's consent, removed the action to this Court, asserting diversity subject-matter jurisdiction.[8]

Thereafter, Sandifer filed an amended complaint expounding upon his claims against Walmart, making allegations that Walmart, as a premises owner, has a duty to "to regulate the movement of 18-wheelers while on its property and to do so in a way that reasonably ensures the safety of pedestrians and others in the area."[9]  Stated differently, Sandifer claims that "Walmart has a duty to design a layout for the safe movement of automobiles and pedestrians on and across its premises."[10]  This alleged duty requires Walmart, says Sandifer, "to devise and implement certain policies and procedures that are designed to maintain a safe and orderly movement of automobiles and pedestrians across the premises it owns … [and to] take steps to ensure that those operating 18-wheelers and other dangerous machinery are sufficiently trained on the policies and procedures."[11]  According to Sandifer, Walmart was negligent in failing to: (a) monitor and regulate the movement of 18-wheelers on its property, (b) reasonably ensure and provide safety to persons in the area, (c) sufficiently devise and implement policies and procedures to maintain safe movement of vehicles and pedestrians, (d) train U.S. Xpress's driver on Walmart's policies and procedures, and (e) design a layout for the safe movement of vehicles and pedestrians.[12]

## II.   PENDING MOTION

Walmart moves for summary judgment, arguing that Sandifer fails to identify any rule of law – statute, jurisprudence, or general principle of fault – establishing that Walmart had a duty to train individuals delivering fuel to its distribution center on a third-party vendor's behalf or that

---

[7] R. Doc. 1-2 at 1-6.
[8] R. Doc. 1.
[9] R. Doc. 59 at 2.
[10] *Id*.
[11] *Id.*
[12] *Id*. at 3.

Walmart had a duty to control the activities of other third-party individuals on its premises.[13] Walmart also argues that Sandifer has not alleged that an unreasonably dangerous condition existed on the premises, and indeed, testified at his deposition that the premises were sufficiently lighted and that there was a clearly-marked yellow area designated for those persons who were refueling the tanks.[14]

In opposition U.S. Xpress argues that Walmart's motion should be denied because there are disputed issues of material fact regarding the condition of Walmart's premises that contributed to the accident, such as a lack of lighting, a lack of striping across the area for refueling the tanks, and a lack of signage.[15]  U.S. Xpress also argues that there are factual issues regarding whether Walmart owed Sandifer an unspecified duty regarding Walmart's requirement that fuel additives be added to the fuel tanks as a part of the refueling process.[16]

Walmart replies, arguing that U.S. Xpress has not cited any law or evidence establishing that Walmart owed a duty to Sandifer or that a condition existed on Walmart's premises that constituted an unreasonable risk of harm.[17]  Walmart points out that Sandifer did not oppose its motion and testified that, at the time of the accident, he was within a clearly-marked and adequately-lighted area where he was supposed to be safe to refuel the tanks.[18]  Walmart also cites Malveo's deposition testimony where he admitted that he was impatient to fuel up and went into the wrong lane, that he was not paying attention to the flow of traffic before he started moving because he was watching a video on his phone, that his windows were fogged obscuring his vision, and that the accident was his fault.[19]  Finally, Walmart contends that U.S. Xpress has identified no

---

[13] R. Doc. 66-1 at 9-11.
[14] *Id.* at 12-13.
[15] R. Doc. 78 at 5-6.
[16] *Id.* at 5, 7-8.
[17] R. Doc. 80 at 1.
[18] *Id.* at 1-3.
[19] *Id.* at 3-6.

duty Walmart owed to Sandifer regarding the requirement upon fuel delivery to also pour in the fuel additive.[20]  According to Walmart, summary judgment is not premature because it has shown that there is no evidence in the record supporting U.S. Xpress's contention that lighting, striping, or signage contributed to the accident.[21]

## III.    LAW & ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id*.  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact.  *Id*. at 323.  If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact.  *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The substantive law identifies which facts are material.  *Id*.  Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a

---

[20] *Id.* at 6-8.
[21] *Id.* at 8-10.

whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37

F.3d at 1075-76.

### B. Analysis

Sandifer asserts negligence and premises liability claims against Walmart.  "Under Louisiana law, courts apply the same duty/risk analysis to negligence claims, whether they arise out of a defendant's negligent conduct or out of liability for defects in premises."  *Boykin v. Surgi*, 2023 WL 5577470, at *1 (E.D. La. Aug. 29, 2023) (citing *Farrell v. Circle K Stores, Inc.*, 359 So. 3d 467, 473 (La. 2023) ("Whether a claim arises in negligence under La. Civ. Code art. 2315 or in premises liability under La. Civ. Code art. 2317.1, the traditional duty/risk analysis is the same.")). A plaintiff asserting a negligence claim must prove five separate elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and, (5) proof of actual damages (the damages element).

*Farrell*, 359 So. 3d at 473 (citing *Malta v. Herbert S. Hiller Corp.*, 333 So. 3d 384, 395 (La. 2021)). "If the plaintiff fails to prove any one element by a preponderance of the evidence, the defendant is not liable."  *Id.*

"The existence of a duty is a question of law."  *Id.*  Courts must inquire "whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty."  *Id.*  Generally, "the owner or custodian of property has a duty to keep the premises in a reasonably safe condition [and] must discover any unreasonably dangerous condition on the premises, and either correct the condition or warn potential victims of its existence."  *Id.* at 473-74.

Here, there is no law or evidence that Walmart breached a duty it owed to Sandifer.  In his amended complaint, Sandifer ***alleged*** that Walmart was liable for the accident because it had a

duty to design a layout for the safe movement of vehicles and pedestrians and train drivers on its policies and procedures for traversing its premises.[22]  However, plaintiff Sandifer did not himself bother to oppose Walmart's motion for summary judgment, so he presents no law or evidence to support his unadorned allegations of duty.  And U.S. Xpress has identified no *law* – whether statute, jurisprudence, or general principle of fault – establishing that Walmart had any such duty. U.S. Xpress has neither presented summary-judgment *evidence* that Walmart breached a duty or that an alleged breach was the cause of the accident, nor evidence of a condition of Walmart's premises at the time of the accident that constituted an unreasonable risk of harm.  This is reflected in the deposition testimony of the two persons involved in the accident: Sandifer, who was engaged in fuel delivery when he was struck by Malveo's truck, and Malveo, who was maneuvering his truck to a fuel pump when he hit Sandifer.

Both deposed about the layout of the fueling center, which consisted of a building containing two bays housing the fuel pumps – the door to the right-side bay marked with a sign saying "enter only," and the left-side bay with a sign saying "exit only."[23]  The ground immediately outside the building, between the two bay doors, was striped with yellow lines to designate the area for persons engaged in refilling the center's two fuel tanks and pouring in the fuel additive.[24]

Sandifer testified at his deposition that the area where he was at the time of the accident was marked with yellow lines and well lit, and he never felt unsafe on the premises.[25]  He also testified that there was a light rain at the time of the accident but the rain did not block his vision,

---

[22] R. Doc. 59 at 2.
[23] R. Docs. 78-2 at 95, 135-40 (photographs); 78-3 at 10-11, 138-41 (photographs).
[24] R. Doc. 78-2 at 69, 139 (photograph).
[25] *Id.* at 68-69, 71, 110, 118.

and that Malveo was not paying attention and should have seen him.[26]  Sandifer further stated that he could have refused to put the fuel additive into the tank, but he did not do so.[27]

Similarly, Malveo testified at his deposition that it was dark and foggy with a light rain at the time of the accident.[28]  His truck windows were fogged to the point that he could not see out of them.[29]  Due to the foggy windows, he did not see the entrance and exit signs on the building housing the fuel-pump bays.[30]  Just before the accident, Malveo was stopped, looking at his phone and watching a video, with earphones in his ears.[31]  Because he was not paying attention, he did not see the truck coming from the opposite direction out of the left-side bay in front of him.[32]  Having been cut off by a truck moving into the right-side bay moments earlier, and impatient to refuel, Malveo put down his phone and decided to move his truck, against the traffic flow, across the yellow-striped area into the left-side lane marked exit only, although, in his hurry, he did not notice the sign at the time.[33]  Malveo admitted that he should not have crossed the lane, that he did not see Sandifer due to his foggy windows although Sandifer was standing under a light, and that he was at fault for the accident.[34]  But Malveo also testified that Sandifer should have put up cones and somehow signaled Malveo as to his presence, perhaps by tapping on the driver's side window of Malveo's truck.[35]

Thus, in their depositions, neither Malveo nor Sandifer placed any blame for the accident on a condition that existed on Walmart's premises.  Sandifer blamed Malveo.  And Malveo took

---

[26] *Id.* at 67-68, 115.

[27] *Id.* at 116.

[28] R. Doc. 78-3 at 9.

[29] *Id.* at 11.

[30] *Id.* at 88, 101.

[31] *Id.* at 15-16.

[32] *Id.* at 20-21, 80.

[33] *Id.* at 11, 16-18, 19 ("I was in a hurry to just hurry up and try to fuel."), 21, 80, 86 ("I was just trying to hurry up and get that stop before anybody else cut me off.").

[34] *Id.* at 76-77, 79, 129.

[35] *Id.* at 78-79, 114.

responsibility for the accident, except to the extent he sought to shift some blame to Sandifer.  U.S. Xpress cites to deposition testimony and photographs to suggest that the lack of lighting, ground markings, and signage contributed to the accident and that, consequently, disputed factual issues make summary judgment inappropriate,[36] but, as reviewed above, the testimony and photographs reveal no such disputed issues of *material* fact.  Instead, Sandifer and Malveo point to other factors as causing the accident, none of which implicate a duty on the part of Walmart.  In sum, then, U.S. Xpress has not presented any evidence demonstrating a breach of a duty by Walmart that contributed to the accident.  Further, U.S. Xpress has not explained how Walmart's requiring the fuel additive caused the accident.  It is irrelevant that Sandifer happened to be in that step of the refueling process at the time of the accident.  He could just as easily have been putting fuel in the tanks, as opposed to the additive.  Both jobs occurred in the same marked and lighted area.  At bottom, U.S. Xpress does not explain how different or more lighting, ground markings, or signage would have prevented the accident given the testimony of the two men involved.  Accordingly, Walmart is entitled to summary judgment in its favor.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Walmart's motion for summary judgment (R. Doc. 66) is GRANTED, and Sandifer's claims against Walmart are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 30th day of May, 2024.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[36] R. Docs. 78; 78-1.