UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| OTHELLO SANDIFER | CIVIL ACTION |
| VERSUS | NO. 23-280 |
| JOHN DOE, *et al.* | SECTION M (4) |

### ORDER & REASONS

Before the Court are several motions filed by plaintiff Othello Sandifer related to the experts of defendant U.S. Xpress, Inc. ("USX").[1] Sandifer's motion to exclude certain testimony of Malcolm Malveo,[2] and Sandifer's motion for partial summary judgment seeking dismissal of USX's comparative fault defense.[3] USX responds in opposition to each motion,[4] and Sandifer replies in further support of his motion for partial summary judgment and his motion to strike untimely expert reports.[5] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying all of the motions.

I.   BACKGROUND

This case concerns a personal injury. On December 18, 2021, Sandifer, who was working for Pilot Travel Centers, LLC ("Pilot") as a truck driver, delivered fuel to the Walmart, Inc. ("Walmart") distribution center in Robert, Louisiana.[6] While Sandifer was outside of his truck but in the area designated for those persons doing fuel delivery, he was hit by an 18-wheeler tractor-trailer owned and operated by USX.[7] Sandifer filed this suit in state court against Walmart, USX,

---

[1] R. Docs. 95; 98; 109.
[2] R. Doc. 97.
[3] R. Doc. 94.
[4] R. Docs. 104; 105; 106; 107; 117.
[5] R. Docs. 112; 121.
[6] R. Doc. 1-2 at 2.
[7] *Id.* at 3.

and the unknown driver, named as "John Doe," who was employed by USX,[8] alleging negligence claims and seeking recovery for personal injuries he sustained.[9]  Walmart, with USX's consent, removed the action to this Court, asserting diversity subject-matter jurisdiction.[10]  This Court granted Walmart's motion for summary judgment, dismissing with prejudice Sandifer's claims against it.[11]  At this time, the only claim remaining is Sandifer's vicarious liability claim against USX.[12]

## II.   LAW & ANALYSIS

### A.  Sandifer's Motions Regarding USX's experts

Sandifer filed three motions directed at USX's experts.  First, Sandifer seeks to strike all three of USX's experts – William Messerschmidt, Stephen L. Day, and Olivia N. Martin.[13]  Next, he seeks to limit those experts' testimony to the "four corners" of their reports.[14]  And finally, Sandifer seeks to strike what he deems untimely supplemental expert reports filed by USX in conjunction with USX's opposition to Sandifer's motion for partial summary judgment.[15]  These are essentially all *Daubert* motions.

### 1.  *Daubert* Standard

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997).  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 of the

---

[8] After suit was filed, Sandifer discovered that the truck driver was Malcolm A. Malveo, and attempted to file an amended complaint naming Malveo as a defendant. R. Doc. 24. However, upon Walmart's motion, Sandifer's first amended complaint was stricken because it was untimely filed. R. Doc. 56. Thus, Malveo is not a party to this suit.
[9] R. Doc. 1-2 at 1-6.
[10] R. Doc. 1.
[11] R. Doc. 81.
[12] R. Doc. 123.
[13] R. Doc. 98.
[14] R. Doc. 95.
[15] R. Doc. 109 (citing R. Docs. 106-6; 106-7; 106-10).

Federal Rules of Evidence requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Id.* at 593-95. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quotations omitted). In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. The party offering the testimony must establish its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Next, the district court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, *i.e.*, whether it is relevant. *Daubert*, 509 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003). Further, an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make[] factual determinations reserved for the trier of fact." *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014).

Rule 702 also requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the district court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact. *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded in part by statute on other grounds as noted in Lester v. Wells Fargo Bank, N.A*., 805 F. App'x 288, 291 (5th Cir. 2020). A witness qualified as an expert is not strictly confined to his area of practice but may testify regarding related applications; a lack of specialization goes to the weight, not the admissibility of the opinion. *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195-96 (5th Cir. 2018).

The facts, data, and sources used in an expert's opinion are generally considered by the jury in weighing the evidence, but "in some cases 'the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion.'" *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). As the gatekeeper, a district judge must "extract evidence tainted by farce or fiction. Expert evidence based on a fictitious set of facts is just as

4

unreliable as evidence based upon no research at all." *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996). "Generally, the fact-finder is entitled to hear an expert's testimony and decide whether the predicate facts on which the expert relied are accurate. At the same time, however, expert testimony that relies on completely unsubstantiated factual assertions is inadmissible." *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (internal quotation marks, alterations, and citations omitted). Ultimately, the expert must "'bring to the jury more than the lawyers can offer in argument.'" *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986)).

### 2. Analysis

USX produced expert reports authored by Messerschmidt, Day, and Martin.[16] Messerschmidt is an expert in accident reconstruction and human factors analysis.[17] He reviewed various photographs and videos of the accident, witness statements, deposition testimony (including Malveo's), weather reports, and the accident reconstruction report completed by Martin to provide an analysis the "human factors issues pertaining to the collision."[18] Messerschmidt opined in part that Sandifer would have been more visible to Malveo if he had been wearing a reflective vest.[19]

Day is a safety expert and Occupational Safety and Health Administration ("OSHA") compliance consultant.[20] He reviewed documents and testimony provided to him and opined in part that "Sandifer exposed himself to a struck by hazard at the time of his injury," because Pilot did not have sufficient controls to protect its drivers from such hazards and Sandifer failed to

---

[16] R. Docs. 98-5; 98-6; 98-7.
[17] R. Doc. 107-6.
[18] R. Doc. 98-5 at 1-16 (quote at 1).
[19] *Id.* at 12-15.
[20] R. Doc. 107-10.

remain within 25 feet of his truck, fuel hose, and control valves, and keep an unobstructed view of his tractor-trailer, during the fuel offload procedure, in violation of Pilot's policy.[21]

Martin is an expert in accident reconstruction.[22] She reviewed the accident reports, various testimony and witness statements (including Malveo's), various photographs and videos, and federal regulations.[23] She opined that Sandifer was partially at fault for the accident because he was in violation of the Pilot employee handbook and certain federal regulations as he was more than 25 feet away from his truck and the delivery hose at the time of the accident.[24]

In his *Daubert* motion to exclude USX's experts, Sandifer does not attack any of these experts' qualifications.[25] Instead, Sandifer argues that their opinions are flawed because, in placing fault on Sandifer, they all fail to acknowledge that Malveo could have maneuvered his truck in a different direction and that Malveo was looking at his phone just before the accident.[26] In opposition, USX argues that its experts are qualified to render their opinions, and that the opinions are relevant to USX's comparative fault defense and based on sufficient facts and sound methodology.[27]

Having weighed the experts' qualifications against the arguments presented, the Court finds that the experts are all qualified by education and experience to render the opinions expressed in their reports. Those opinions are relevant to USX's comparative fault defense and are reliable. Sandifer's concerns with the experts' opinions can be addressed through vigorous cross-examination and the presentation of countervailing expert testimony.

---

[21] R. Doc. 98-6 at 1-7 (quote at 6).
[22] R. Doc. 107-7.
[23] R. Doc. 98-7 at 1-2.
[24] *Id.* at 10.
[25] *See* R. Doc. 98-1.
[26] *Id.* at 3-6.
[27] R. Doc. 107 at 13-25.

Sandifer also seeks to limit the testimony of USX's experts to the four corners of their reports, arguing that Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires an expert report to state all opinions the witness will express and that the reports do not contain opinions on causation.[28] Sandifer then seeks to strike the experts' affidavits that USX filed in conjunction with USX's opposition to Sandifer's motion for partial summary judgment because, he says, the affidavits do contain opinions on causation and, so, are really untimely supplemental expert reports which should be excluded on that basis.[29] In opposition, USX argues that all three of its experts' original reports contain opinions on causation and Sandifer's comparative fault and that experts may elaborate on and explain their reports in trial testimony.[30] As to the supposedly untimely supplemental reports, USX argues that it did not submit untimely expert reports, but rather had its experts testify through affidavits to authenticate their reports and highlight their qualifications and key opinions expressed in those reports.[31]

Rule 26(a)(2)(B) requires a party to disclose the identity of any expert witness it may use at trial and generally must accompany this disclosure with a written report prepared and signed by the witness. The report must contain, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). However, "Rule 26 does not limit an expert's testimony simply to reading his report," but rather "contemplates that the expert will supplement, elaborate upon, and explain his report in his oral testimony." *Caldarera v. N. Light Specialty Ins. Co.*, 2023 WL 9523906, at *1 (W.D. La. Dec. 6, 2023) (quotation omitted).

---

[28] R. Doc. 95-1 at 1-3.
[29] R. Docs. 109 (citing R. Docs. 106-6; 106-7; 106-10); 121.
[30] R. Doc. 104 at 12-20.
[31] R. Doc. 117 at 1-7.

Here, USX's experts timely provided reports disclosing their opinions and the basis and reasons for such opinions. The complained-of "untimely" supplemental reports are nothing more than affidavits reiterating and expounding upon the opinions found in those reports. USX's experts may testify at trial as to the content of their reports with reasonable supplementation, elaboration, and explanation of the opinions found in the reports. Again, Sandifer's concerns with the experts' opinions can be addressed through vigorous cross-examination and the presentation of countervailing expert testimony. Moreover, to the extent the experts attempt to offer at trial any new opinions beyond a reasonable supplementation, elaboration, or explanation of the opinions set out in their reports, Sandifer may interpose contemporaneous objections.

Thus, all three of Sandifer's motions to exclude or limit the testimony of USX's experts are DENIED.

**B. Sandifer's Motion to Exclude Certain Testimony of Malveo**

Sandifer seeks to exclude certain portions of Malveo's testimony that shift blame to Sandifer, characterizing it as "self-serving."[32] Sandifer argues that the testimony is speculative under Rule 602 of the Federal Rules of Evidence and more prejudicial than probative under Rule 403 of the Federal Rules of Evidence.[33] In opposition, USX argues that the testimony Sandifer seeks to exclude is not "clearly inadmissible," but rather constitutes "Malveo's personal observations, perceptions, and opinion regarding the accident, which is admissible" under Rule 701 of the Federal Rules of Evidence.[34] USX further argues that neither Rule 602, nor Rule 403, precludes the testimony because it is based on Malveo's first-hand observations of the accident, is not unfairly prejudicial, and will assist the jury in determining fault.[35]

---

[32] R. Doc. 97-1 at 1-7 (quote at 6).
[33] *Id.*
[34] R. Doc. 105 at 12-13 (quote at 13).
[35] *Id.* at 13-22.

Rule 602 states that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needless presenting cumulative evidence." And, Rule 701 permits a lay witness to give opinion testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Malveo, as the driver of the truck that hit Sandifer, certainly has personal knowledge of the accident and is able to testify as to his perception of what occurred. His opinion that Sandifer shares fault for the accident is rationally based on his perception of the incident, is helpful to understanding his testimony and determining a fact in issue (*viz.*, comparative fault), and is not based on scientific or technical knowledge. Moreover, although the testimony is not helpful to Sandifer's case, it is not unfairly prejudicial, which is what Rule 403 prohibits. Thus, Malveo's testimony is admissible and Sandifer's motion to exclude it is DENIED.

## C. Sandifer's Motion for Partial Summary Judgment

Sandifer seeks partial summary judgment dismissing USX's comparative fault defense.[36] Sandifer argues that USX has no evidence that his actions were a "cause-in-fact" of the accident; rather, all the evidence shows that Malveo was solely responsible for the accident.[37] Sandifer further argues that Malveo's testimony shifting blame to him, as well as the testimony of USX's experts placing fault on him, cannot be considered in weighing the summary-judgment motion

---

[36] R. Doc. 94.
[37] 94-1 at 6-12.

because such evidence is inadmissible as urged in his motions *in limine*.[38]  In opposition, USX argues that Malveo's testimony and its experts' opinions are admissible and there a genuine issues of material fact that preclude summary judgment on its comparative fault defense.[39]

The Court agrees with USX.  Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56.  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact.  *Id*. at 324.  A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence.  *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008).  Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment.  *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001).

Considering these principles and the record in this case, the Court finds that there are genuine issues of material fact that preclude summary judgment in Sandifer's favor on USX's comparative fault defense.  Thus, his motion for partial summary judgment is DENIED.

---

[38] *Id.* at 12-20.
[39] R. Doc. 106 at 1, 10-25.

### III.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Sandifer's motion *in limine* to exclude USX's experts (R. Doc. 98) is DENIED.

IT IS FURTHER ORDERED that Sandifer's motion *in limine* to limit USX's experts to the four corners of their reports (R. Doc. 95) is DENIED.

IT IS FURTHER ORDERED that Sandifer's motion *in limine* to strike untimely expert reports (R. Doc. 109) is DENIED.

IT IS FURTHER ORDERED that Sandifer's motion *in limine* to exclude testimony of Malveo (R. Doc. 97) is DENIED.

IT IS FURTHER ORDERED that Sandifer's motion for partial summary judgment (R. Doc. 94) is DENIED.

New Orleans, Louisiana, this 6th day of March, 2025.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE